IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| RICHARD EGGERS, individually and on behalf of a putative class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.<br><br>Defendant. | Case No: 4:14-cv-394<br><br><br><br><br><br>**AMENDED PETITION AND JURY DEMAND** |

COMES NOW the Plaintiff, Richard Eggers, by and through his attorneys, Newkirk Zwagerman Law Firm, and for his cause of action hereby states the following. Pursuant to Rule 15(a)(2), the court gave leave to file this amendment for the purposes of consolidating Mr. Eggers' ICRA claims filed under Case No. 4:15-cv-00064 with this matter.

## INTRODUCTION

1. An employer's policy or practice of using applicants' or employees' criminal histories to make personnel decisions violates the prohibition against employment discrimination under the Age Discrimination in Employment Act of 1967 (the ADEA) and the Iowa Civil Rights Act (the ICRA) if the policy or practice has a disproportionate effect against older individuals and if criminal histories are not job-related and consistent with business necessity.

2. Employers also violate the ADEA and the ICRA if they treat criminal history information differently for different applicants or employees based on their protected status.

3. This action challenges Wells Fargo's violations of the ADEA and the ICRA stemming from its use of a criminal background check policies and practices.

4. This action also challenges Wells Fargo's violations of the ADEA and the ICRA due to its practice of treating criminal history information differently for different applicants based on their protected status.

5. Wells Fargo's criminal background check policies and practices were not restricted to Iowa – Wells Fargo implemented these policies and practices at its locations throughout the United States.

6. Plaintiff Richard Eggers is a resident and citizen of Polk County, Iowa.

7. Mr. Eggers seeks to represent a putative class of older employees and applicants who were negatively affected by Wells Fargo's use of non-job-related criminal history screenings.

8. Wells Fargo is a federally chartered national banking organization that is organized and exists under the National Banking Act, doing business in Des Moines, Polk County, Iowa, with its home office located in South Dakota.

9. The acts of which Plaintiff complains occurred at Wells Fargo locations throughout the United States.

10. This putative class action is an action for declaratory and injunctive relief, monetary and compensatory damages, and other relief.

## **PROCEDURAL REQUIREMENTS**

11. Prior to filing this action, Mr. Eggers filed charges of employment discrimination on the basis of age with the Equal Employment Opportunity Commission (EEOC) and the Iowa Civil Rights Commission (ICRC).

12. Mr. Eggers obtained right to sue letter from the EEOC and the ICRC within 90 days of the filing of the claims set forth in this pleading.

## FACTS

13. In 1950, Congress passed 12 U.S.C. § 1829 (Section 19), a law that required banks to obtain "written consent" from the FDIC if they employed or sought to employ individuals who were convicted of crimes of dishonesty in the past.

14. Section 19 was passed 14 years prior to the Civil Rights Act of 1964 (Title VII), a law that prohibits banks like Wells Fargo from engaging in employment practices that "otherwise adversely affect" African Americans and other protected classes of individuals.

15. Section 19 was passed 15 years before the Iowa Civil Rights Act, a law that prohibits banks like Wells Fargo from "otherwise discriminat[ing] in employment against any applicant for employment or any employee because of … race."

16. Section 19 was passed 17 years before the Age Discrimination in Employment Act, a law that prohibits banks like Wells Fargo from engaging in employment practices that "otherwise adversely affect" older workers.

17. Section 19 was passed 41 years before the Civil Rights Act of 1991, a law that prohibited banks like Wells Fargo from using employment practices that disproportionately impacted African Americans and other protected classes of individuals for non-job-related reasons that were not consistent with business necessity.

18. Section 19 was passed before the enactment of any of our nation's civil rights laws that protected older workers from disparate impact discrimination.

19. Older workers have been disproportionately convicted of crimes within the meaning of Section 19.

20. In the decades that followed Section 19's, Title VII's, the ICRA's, and the ADEA's respective enactments, Wells Fargo exercised discretion in how it sought to comply

with these statutes.

21. In 2001, for example, when applicants applied for positions, Wells Fargo complied with Section 19 and civil rights statutes by only asking applicants whether they were convicted of crimes of dishonesty "within the past 10 years."

22. Despite the fact that applicants were convicted of decade-old crimes that would have, in theory, required Wells Fargo to sponsor their FDIC exemption waivers if Wells Fargo wished to be in complete compliance with both Section 19 and civil rights statutes, Wells Fargo – at its discretion – chose to hire convicted applicants without sponsoring their FDIC exemptions.

23. As of 2004, when applicants applied for positions with Wells Fargo, the bank exercised discretion in how it complied with Section 19 and civil rights statutes in a slightly different manner than it did in 2001. Rather than restricting its application questioning to crimes committed "within the past 10 years," Wells Fargo expanded its questioning and asked applicants to disclose whether they were ever convicted of a crime of dishonesty or breach of trust such as theft or falsification.

24. Despite the fact that some applicants disclosed the fact that they had been convicted of crimes of dishonesty, Wells Fargo – at its discretion – chose to hire them anyway.

25. Wells Fargo's discretionary criminal background check practices show that not only did Wells Fargo exercise discretion in how it chose to comply with Section 19 – Wells Fargo exercised discretion in whether it chose to comply with Section 19 at all.

26. Wells Fargo hired Mr. Eggers after he successfully completed the bank's Section 19 criminal background screening – despite the fact that he had a decades-old criminal conviction.

27. In the years that followed, Mr. Eggers successfully performed his job duties without committing any acts of dishonesty or breach of trust.

28. Mr. Eggers was qualified for employment at Wells Fargo because he posed no obvious risk to Wells Fargo or the banking industry because of his decades-old conviction.

29. In 2012, however, Wells Fargo forced Mr. Eggers and his co-workers to submit to another criminal background screening.

30. Since Mr. Eggers had not committed any new crimes since his hire, he thought that Wells Fargo's new background screening was simply a formality.

31. Wells Fargo never informed Mr. Eggers that the bank was planning on violating the laws against disparate impact discrimination by firing all employees who ever committed crimes of dishonesty – no matter how remote in time their crimes took place, no matter how non-job-related their prior offenses were, and no matter how high of a disproportionate effect the firings had against older workers.

32. Despite having the discretion to do so under Section 19, Wells Fargo refused to adopt reasonable alternative practices that would have lessened the adverse impact against older applicants and employees.

33. Wells Fargo refused to provide most of its employees and applicants with notice of their opportunity to obtain FDIC exemptions prior to their exclusions.

34. Wells Fargo refused to sponsor the FDIC exemption applications for most of its employees and applicants.

35. Wells Fargo refused to suspend most employees with or without compensation pending the resolution of their FDIC exemption requests.

36. Mr. Eggers was qualified to apply for an FDIC exemption.

37. Despite the fact that suspension, sponsorship, and notice were (1) practices that were permitted by Section 19 and (2) practices that were required by Title VII, the ADEA, and the ICRA to prevent disparate impact discrimination, Wells Fargo implemented its criminal background check practices in a manner that ensured the highest degree of adverse impact against African Americans, Hispanics, older workers, and other protected classes of individuals.

**Facts Specific to Richard Eggers**

38. Richard Eggers was born in 1944.

39. In February of 1963, Richard Eggers was arrested in Carlisle, Iowa after a sheriff witnessed him attempt to place a dime-shaped cardboard cutout into a laundry machine.

40. Mr. Eggers received a fifteen-day jail sentence and a fifty-dollar fine.

41. Mr. Eggers served two days in jail before earning release.

42. Decades passed by, and Mr. Eggers was never arrested or convicted of any other crimes.

43. In approximately April of 2005, Mr. Eggers began working for Wells Fargo as a Customer Service Representative.

44. As a customer service representative, Mr. Eggers' job duties consisted of answering incoming calls from customers who had questions or complaints regarding their mortgages.

45. In approximately February of 2012, Mr. Eggers received an email from Wells Fargo notifying him that he needed to participate in a criminal background check.

46. Mr. Eggers completed his background check on May 1, 2012.

47. On May 23, 2012, Wells Fargo sent Mr. Eggers a document titled "Pre-Adverse Action Notification" stating that a decision was pending regarding his continued employment at

Wells Fargo.

48. On May 30, 2012, Wells Fargo sent Mr. Eggers a document titled "Adverse Action Notification" stating that Wells Fargo was unable to consider him further for employment because of his criminal background report.

49. On July 12, 2012, Wells Fargo fired Mr. Eggers.

50. Wells Fargo notified Mr. Eggers that he was fired because his conviction from the cardboard dime incident from 1962 showed up on his background check.

51. Wells Fargo had a policy in place where they fired any employee who was ever convicted of a crime of dishonesty – no matter how long ago the convictions took place.

52. Wells Fargo's background check policy had a disproportionate effect on its older workers because due to their age, they were more likely than younger employees to have been convicted of a crime at some point in their lives.

53. In his termination letter, Wells Fargo informed Mr. Eggers that he had the option of pursuing a waiver with the Federal Deposit Insurance Corporation (the FDIC) if he wanted to be eligible for re-employment.

54. Wells Fargo did not tell Mr. Eggers that the bank had the option to pursue an FDIC waiver on his behalf prior to his termination while placing him on paid or unpaid suspension.

55. Wells Fargo did not have to fire Richard Eggers because the bank could have sponsored an FDIC waiver application on his behalf prior to his termination.

56. Wells Fargo did not tell Mr. Eggers about his right to pursue a waiver prior to his termination.

57. Wells Fargo did not have to fire Richard Eggers because the bank could have told

Mr. Eggers about his right to pursue a waiver prior to his termination.

58. Electing to pursue waivers on behalf of employees like Mr. Eggers and electing to tell employees like Mr. Eggers about how they can pursue waivers prior to their termination are alternative practices that would have had less of an adverse impact on protected classes of employees.

59. Social science supports the fact that older workers may be disproportionately affected by background screening policies that have no temporal limitation.

60. Wells Fargo's practice of forcing employees like Richard Eggers to complete criminal background checks with no temporal limitations has a disparate impact on older workers.

61. Wells Fargo has given younger employees advanced notice of how to obtain FDIC waivers.

## COUNT I
## VIOLATION OF THE ADEA
## DISPARATE IMPACT DISCRIMINATION

62. Plaintiff repleads all other paragraphs set forth in this Petition and incorporates the same by reference as if fully set forth herein.

63. Wells Fargo's background check policy has the effect of disproportionately screening out older applicants and employees.

64. Statistical analysis derived from an examination of Wells Fargo's applicant data, workforce data, and third party criminal background screening data will show that older workers like Mr. Eggers were disproportionately affected by Wells Fargo's use of criminal history screenings.

65. Wells Fargo's criminal background check policy is not job-related to many

positions held by the bank's employees.

66. No substantive link exists between Mr. Eggers' fifty-year-old transgression and the risks inherent in the duties as a customer service representative.

67. A non-job-related criminal conviction, such as a conviction for attempting to put a cardboard dime in a laundry machine in 1963, is not a reasonable factor other than age to base an employment decision upon.

68. Wells Fargo failed to implement any targeted screenings of criminal convictions that considered the nature of the crimes, the time elapsed, and the nature of jobs applied for.

69. Wells Fargo failed to provide excluded applicants and employees with an opportunity for an individualized assessment to determine whether their criminal histories were job related.

70. Wells Fargo's background check policy was not a business necessity because Wells Fargo had the option of obtaining waivers for its applicants and employees.

71. Wells Fargo could have implemented less discriminatory alternative employment practices that served its legitimate goals as effectively as its criminal history screenings, but Wells Fargo refused to adopt those practices.

72. Richard Eggers seeks to represent a putative class of older applicants who were affected by Wells Fargo's use of criminal background screenings.

73. Wells Fargo used its criminal background screenings at its facilities located throughout the United States.

74. As a proximate result of Defendants' acts and omissions, Mr. Eggers and the putative class he seeks to represent have in the past and will in the future suffer damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation,

intimidation, insecurity, embarrassment, lost enjoyment of life, lost wages, benefits, future earnings, punitive damage, and other emoluments of employment.

75. In addition, Mr. Eggers and the putative class he seeks to represent are entitled to equitable relief including but not limited to: 1) benefits not measured as compensatory damages, including relief to offset any damage to their reputations, 2) injunctive relief prohibiting Defendant Wells Fargo from subjecting future applicants to discriminatory criminal history screenings, 3) injunctive relief requiring Wells Fargo to hire applicants and former employees who were screened out of the company's hiring process due to criminal background screenings, and 4) other forms of equitable relief available under the ADEA.

**COUNT II**
**VIOLATION OF THE ADEA**
**DISPARATE TREATMENT DISCRIMINATION**

76. Mr. Eggers re-alleges all other paragraphs in this petition as if fully set forth herein.

77. Prior to its implementation, Wells Fargo knew that its background check policy would result in the termination of a disproportionate number of protected-class individuals, including older employees.

78. An audit of Wells Fargo's past practices regarding its use of criminal background checks will reveal inconsistencies showing that Wells Fargo was more likely to give younger applicants an avenue to circumvent Wells Fargo's background check policies than older employees.

79. Wells Fargo's usual, rather than unusual, practice (its standard operating procedure) was to give decision-makers discretion in regards to whether they could waive their background screening policy for certain employees and applicants.

80. Wells Fargo's use of that discretion disproportionately affected older workers.

81. Statistical analysis derived from an examination of Wells Fargo's applicant data, workforce data, and third party criminal background history data will show that Wells Fargo's use of discretion in the criminal background screening process weighed more heavily against older workers.

82. Wells Fargo discriminated against Mr. Eggers because of his age by firing him because of his criminal background screening.

83. Mr. Eggers seeks to represent a putative class of older workers affected by Wells Fargo's pattern-or-practice of allowing hiring supervisors to exercise discretion in their use of criminal background screenings in the hiring process.

84. While the exact number of putative class members is unknown because such information is in the exclusive control Wells Fargo, upon information and belief there are hundreds, if not thousands, of applicants and former employees who have been the victim of an adverse employment decision taken by Wells Fargo in violation of the ADEA because of their criminal backgrounds.

85. The claims alleged on behalf of Mr. Eggers raise questions of law and fact common to the putative class.

86. Chief among these questions is whether Wells Fargo had a policy and practice of unlawfully refusing to employ Mr. Eggers and the putative class members in violation of the ADEA because they have been convicted of a crime where there is no direct relationship between the crime and employment.

87. As a proximate result of Defendants' acts and omissions, Mr. Eggers and the putative class he seeks to represent have in the past and will in the future suffer damages

including, but not limited to, mental and emotional distress, fear, anguish, humiliation, intimidation, insecurity, embarrassment, lost enjoyment of life, lost wages, benefits, future earnings, and other emoluments of employment.

88. In addition, Mr. Eggers and the putative class he seeks to represent are entitled to equitable relief including but not limited to: 1) benefits not measured as compensatory damages, including relief to offset any damage to their reputations, 2) injunctive relief prohibiting Wells from subjecting future applicants and employees to discriminatory criminal history screenings, 3) injunctive relief requiring Wells Fargo to hire applicants and employees who were adversely affected by Wells Fargo's criminal background screenings, and 4) other forms of equitable relief available under the ADEA.

WHEREFORE, Plaintiff and the putative class he seeks to represent demand judgment against Wells Fargo in an amount which will fully and fairly compensate them for their injuries and damages, for punitive damages in an amount sufficient to punish Wells Fargo and deter others, for interest as allowed by law, for attorneys' fees, for the costs of this action, for appropriate equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purpose of the ADEA.

**COUNT III**
**VIOLATION OF THE ICRA**
**DISPARATE IMPACT DISCRIMINATION**

89. Plaintiff repleads all other paragraphs of this Petition and incorporates the same by reference as if fully set forth herein.

90. Wells Fargo's background check policy has the effect of disproportionately screening out older applicants and employees.

91. Statistical analysis derived from an examination of Wells Fargo's applicant data,

workforce data, and third party criminal background screening data will show that older workers like Mr. Eggers were disproportionately affected by Wells Fargo's use of criminal history screenings.

92. Wells Fargo's criminal background check policy is not job-related to many positions held by the bank's employees.

93. Mr. Eggers and the putative class of individuals he seeks to represent posed no obvious risk to Wells Fargo or the banking industry due to their past convictions, but rather, were valuable and respected employees who merited a second chance.

94. No substantive link exists between Mr. Eggers' fifty-year-old transgression and the risks inherent in the duties as a customer service representative.

95. Wells Fargo failed to implement any targeted screenings of criminal convictions that considered the nature of the crimes, the time elapsed, and the nature of jobs applied for.

96. Wells Fargo failed to provide excluded applicants and employees with an opportunity for an individualized assessment with the FDIC to determine whether their criminal histories were job related.

97. Wells Fargo's background check policy was not a business necessity because Wells Fargo had the option of obtaining waivers for its applicants and employees.

98. Wells Fargo purposefully withheld notification of applicants' and employees' right to obtain waivers that would allow them to pass Wells Fargo's background check policy by contacting the FDIC.

99. Wells Fargo could have implemented less discriminatory alternative employment practices that served its legitimate goals as effectively as its criminal history screenings, but Wells Fargo refused to adopt those practices.

100. If a conflict exists between Section 19 and federal civil rights statutes, Wells Fargo wrongfully relied on a law that was impliedly amended by Title VII and the ADEA to justify its background check policy that violated Title VII and the ADEA.

101. Richard Eggers seeks to represent a putative class of older applicants who were affected by Wells Fargo's use of criminal background screenings.

102. Wells Fargo used its criminal background screenings at its facilities located throughout Iowa.

103. As a proximate result of Defendants' acts and omissions, Mr. Eggers and the putative class he seeks to represent have in the past and will in the future suffer damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, intimidation, insecurity, embarrassment, lost enjoyment of life, lost wages, benefits, future earnings, , and other emoluments of employment.

104. In addition, Mr. Eggers and the putative class he seeks to represent are entitled to equitable relief including but not limited to: 1) benefits not measured as compensatory damages, including relief to offset any damage to their reputations, 2) injunctive relief prohibiting Defendant Wells Fargo from subjecting future applicants to discriminatory criminal history screenings, 3) injunctive relief requiring Wells Fargo to hire applicants and former employees who were screened out of the company's hiring/employment process due to criminal background screenings, and 4) other forms of equitable relief available under the ICRA.

**COUNT IV**
**VIOLATION OF THE ICRA**
**DISPARATE TREATMENT DISCRIMINATION**

105. Mr. Eggers re-alleges all other paragraphs in this complaint as if fully set forth herein.

106. Prior to its implementation, Wells Fargo knew that its background check policy would result in the termination of a disproportionate number of protected-class individuals, including older employees.

107. An audit of Wells Fargo's past practices regarding its use of criminal background checks will reveal inconsistencies showing that Wells Fargo was more likely to give younger applicants an avenue to circumvent Wells Fargo's background check policies than older employees.

108. Wells Fargo's usual, rather than unusual, practice (its standard operating procedure) was to give decision-makers discretion in regards to whether they could waive their background screening policy for certain employees and applicants.

109. Wells Fargo's use of that discretion disproportionately affected older workers.

110. Statistical analysis derived from an examination of Wells Fargo's applicant data, workforce data, and third party criminal background history data will show that Wells Fargo's use of discretion in the criminal background screening process weighed more heavily against older workers.

111. Wells Fargo discriminated against Mr. Eggers treated Mr. Eggers differently than other similarly situated employees because of his age.

112. Mr. Eggers seeks to represent a putative class of older workers affected by Wells Fargo's pattern-or-practice of allowing hiring supervisors to exercise discretion in their use of criminal background screenings in the hiring process.

113. While the exact number of putative class members is unknown because such information is in the exclusive control Wells Fargo, upon information and belief there are

numerous older applicants and former employees who have been the victim of an adverse employment decisions taken by Wells Fargo in violation of the ICRA because of their age.

114. The claims alleged on behalf of Mr. Eggers raise questions of law and fact common to the putative class.

115. Chief among these questions is whether Wells Fargo had a policy and practice of unlawfully refusing to employ Mr. Eggers and the putative class members in violation of the ICRA because they have been convicted of a crime where there is no direct relationship between the crime and employment.

116. As a proximate result of Defendants' acts and omissions, Mr. Eggers and the putative class he seeks to represent have in the past and will in the future suffer damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, intimidation, insecurity, embarrassment, lost enjoyment of life, lost wages, benefits, future earnings, and other emoluments of employment.

117. In addition, Mr. Eggers and the putative class he seeks to represent are entitled to equitable relief including but not limited to: 1) benefits not measured as compensatory damages, including relief to offset any damage to their reputations, 2) injunctive relief prohibiting Wells from subjecting future applicants and employees to discriminatory criminal history screenings, 3) injunctive relief requiring Wells Fargo to hire applicants and employees who were adversely affected by Wells Fargo's criminal background screenings, and 4) other forms of equitable relief available under the ICRA.

WHEREFORE, Plaintiff and the putative class he seeks to represent demand judgment against Wells Fargo in an amount which will fully and fairly compensate them for their injuries and damages, for interest as allowed by law, for attorneys' fees, for the costs of this action, for

appropriate equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purpose of the ICRA.

## JURY DEMAND

COMES NOW the Plaintiff, on behalf of himself and others similarly situated, and hereby requests a trial by jury in the above-captioned matter on all issues of fact and compensatory damages.

NEWKIRK ZWAGERMAN, P.L.C.

  /s/ Leonard E. Bates
Thomas A. Newkirk   AT0005791
tnewkirk@newkirklaw.com
Leonard E. Bates   AT0010869
lbates@newkirklaw.com
515 E. Locust Street, Suite 300
Des Moines, IA  50309
Telephone:  515-883-2000
Fax:  515-883-2004
ATTORNEYS FOR PLAINTIFF

Original filed.

Copy to:

Michael A. Giudicessi
Emily S. Hildebrand Pontius
Britt L. Teply
Faegre Baker Daniels LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA 50309
Telephone:  515-248-9000
ATTORNEYS FOR DEFENDANT